*SUPPRESSED*

FILED

JUN 2 6 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. |
| ) | |
| JOHN KJAR, ) | **4:24CR331-HEA/JMB** |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that, at times relevant to this Indictment, unless otherwise specified below:

### INTRODUCTION

**A.** **The Paycheck Protection Program**

1. The United States Small Business Administration (the "SBA") is an executive-branch agency of the United States federal government that provides support to entrepreneurs and small businesses. The SBA's mission is to maintain and strengthen the nation's economy by enabling the establishment and vitality of small businesses and by assisting in economic recovery after disasters.

2. The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to mitigate the negative impacts of the COVID-19 pandemic, including the negative economic impact on American small businesses.

3. Among other things, the CARES Act established a new loan program known as the Paycheck Protection Program (the "PPP"). The PPP was administered by the SBA and authorized

fully forgivable loans to eligible small businesses that needed emergency financial assistance to stay in operation and keep their workers employed during the COVID-19 pandemic.

4. To obtain a PPP loan, an eligible business had to apply by submitting a PPP loan application to a third-party lender that participated in the PPP.

5. Once submitted, the PPP loan application was processed by the lender. If the application was approved, the lender funded the PPP loan with its own money.

6. Although the lender funded the PPP loan with its own money, the loan was backed by a full guarantee from the SBA. Generally, this meant that the SBA would be responsible for repaying the loan to the lender if the borrower defaulted.

7. A borrower that received a PPP loan was permitted to use the loan proceeds to pay for certain authorized business-related expenses (such as payroll costs, rent payments, utility payments, and other operating costs) and was prohibited from using the proceeds for any other purpose.

8. Under applicable PPP rules and guidance, the borrower could seek to have the principal and interest owed on the PPP loan fully forgiven by submitting a forgiveness application to the lender. If the forgiveness application was approved by the lender, such that the loan was fully forgiven, then the SBA repaid the lender the principal and interest owed on the loan, which resulted in the borrower owing nothing and having no obligation to repay the lender.

9. A borrower who received a PPP loan (referred to as a "First Draw" PPP loan) could apply for and receive a second PPP loan (referred to as a "Second Draw" PPP loan) by submitting a Second Draw PPP loan application.

10. Like a First Draw PPP loan, a Second Draw PPP loan was backed by a full guarantee from the SBA, could be used only to pay for certain authorized business-related expenses, and was eligible for full forgiveness.

**B.  The Defendant**

11. The Defendant, **JOHN KJAR** ("Defendant Kjar"), was a co-owner and the President of Baretta, Inc., which operated as Caleco's Bar & Grill ("Caleco's") in the City of St. Louis, Missouri, within the Eastern District of Missouri.

12. On or about February 24, 2021, Defendant Kjar, acting as the authorized representative of Caleco's, submitted a Second Draw PPP loan application to U.S. Bank National Association ("U.S. Bank"), which was a third-party lender that participated in the PPP.

13. In the Second Draw PPP loan application, Defendant Kjar certified that "[a]ll loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules . . . ."

14. Defendant Kjar further certified that:

The funds will be used to retain workers and maintain payroll; or make payment for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

15. U.S. Bank approved Caleco's Second Draw PPP loan application. As a result, on or about February 25, 2021 (the day after Defendant Kjar submitted the application), U.S. Bank deposited $535,804.00 into Caleco's U.S. Bank account ending in 6131 (the "U.S. Bank Account").

16. Prior to the deposit of the Second Draw PPP loan proceeds, Caleco's U.S. Bank Account had a balance of approximately $71,000.

17. On or about March 12, 2021, Defendant Kjar issued two checks totaling $275,000 from Caleco's U.S. Bank Account, neither of which was used to pay for expenses authorized under the PPP. Specifically, Defendant Kjar issued one check in the amount of $175,000 made payable to Defendant Kjar and his wife for a "loan repayment," and a second check in the amount of $100,000 made payable to Defendant Kjar's brother (the other co-owner of Caleco's) for a "loan repayment."

18. Without the deposit of the Second Draw PPP loan proceeds, Caleco's U.S. Bank Account would not have had sufficient funds for Defendant Kjar to pay $275,000 to himself and his family members.

19. On or about August 23, 2021, Defendant Kjar submitted a forgiveness application to U.S. Bank for Caleco's Second Draw PPP loan.

20. In the forgiveness application, Defendant Kjar certified that "I understand if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of the loan amounts and/or civil or criminal fraud charges."

21. On or about August 31, 2021, U.S. Bank approved the forgiveness application and, as a result, the SBA repaid $538,587.20 to U.S. Bank, which represented the full amount of principal and interest owed on Caleco's Second Draw PPP loan.

22. The SBA's full repayment of Caleco's Second Draw PPP loan absolved Caleco's of any obligation to repay the loan, including the portion of the loan proceeds that Defendant Kjar paid directly to himself and his family members.

## COUNT ONE
## (False Statement to a Financial Institution: 18 U.S.C. § 1014)

23. The above paragraphs are hereby realleged and incorporated by reference.

24. On or about February 24, 2021, in the Eastern District of Missouri and elsewhere, the defendant,

## JOHN KJAR

knowingly made a false statement and report for the purpose of influencing the action of U.S. Bank National Association, an institution the accounts of which are insured by the Federal Deposit Insurance Corporation, in connection with an application for a loan, in that Defendant Kjar caused to be submitted on behalf of Caleco's in a Second Draw PPP loan application the false statement that "[a]ll loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules . . . ."

All in violation of Title 18, United States Code, Section 1014.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1014, as set forth in Count One, Defendant Kjar shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting, or derived from, any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of Defendant Kjar:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
Justin M. Ladendorf #68558MO
Assistant United States Attorney